UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-201-GWU

BARRY JACKSON TEAGUE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

Barry Teague brought this action to obtain judicial review of an administrative denial decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

11-201  Barry Jackson Teague

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

     Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

2

11-201  Barry Jackson Teague

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

  One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

  However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Teague, a 53-year-old former telephone line installer/repairman with a high school education, suffered from impairments related to chronic low back pain, obesity, and hypertension.  (Tr. 13, 18-19).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 15, 18).  Since the available work was found to constitute a significant number of jobs in the national economy, the

11-201  Barry Jackson Teague

claimant could not be considered totally disabled. (Tr. 19-20). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Norman Hankins included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as: (1) an inability to more than occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; (2) an inability to ever climb ladders, ropes or scaffolds; (3) an inability to more than occasionally reach overhead; (4) a need to avoid extreme cold; and (5) a need to avoid more than "moderate" exposure to vibration. (Tr. 62). In response, the witness indicated that Teague's past work would be precluded, but identified a significant number of other jobs in the national economy which could still be performed. (Tr. 62-64). Therefore, assuming that the vocational factors considered by Hankins fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Teague argues that the ALJ erred by improperly rejecting the physical restrictions assessed by Dr. Jerry Woolum, his treating physician. Among the physical limitations identified by Dr. Woolum were an inability to lift more than 10

pounds occasionally, sit more than a total of two hours a day, stand for more than a total of one hour a day and walk for more than a total of one hour a day. (Tr. 250). The doctor precluded the plaintiff from ever bending, squatting, crawling and climbing. (Id.). Reaching was restricted to occasional performance. (Id.). "Mild" limitations were noted on exposure to unprotected heights, being around moving machinery, marked changes in temperature and humidity and environmental pollutants as well as driving automotive equipment. (Id.). These were far more severe physical limitations than those found by the ALJ and presented to the vocational expert.

Teague notes that, the opinion of a treating source is generally entitled to superior weight and controlling weight if well supported by acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). The ALJ is required to give good reasons if the opinion of a treating source is rejected. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). Part of the rationale for giving good reasons is to allow a claimant to understand the disposition of his case, and a failure to follow the procedural requirement is a ground for remand. Wilson, 378 F.3d at 544. The Sixth Circuit Court of Appeals has found that the failure of the administration to follow its own procedural requirements can constitute reversible

11-201 Barry Jackson Teague

error even if the case is otherwise supported by substantial evidence. Wilson, 378 F.3d at 546.

In the present action, Teague asserts that the ALJ failed to give good reasons for rejecting the opinion of Dr. Woolum. Among the reasons cited by the ALJ in rejecting Dr. Woolum's limitations were that these were not consistent with the lack of objective medical findings, especially on physical examination, the limitations were not consistent with the plaintiff's daily activities, the limitations were not consistent with the conservative course of treatment, and the limitations were inconsistent with the opinion of the treating doctor presented to the claimant's employer in January of 2008, indicating he could perform light level work. (Tr. 18). While Teague argues that the ALJ did not articulate what the inconsistencies in the medical record were, the court notes that the ALJ did extensively review the record and noted a lack of objective physical findings. An MRI scan of the cervical spine in January of 2008 obtained by Dr. Woolum revealed no evidence of disc herniation, central canal stenosis or neural foraminal abnormality. (Tr. 17, 208). The ALJ noted that a January, 2008 MRI scan of the lumbar spine showed only mild degenerative disc disease at L4-L5 with mild foraminal narrowing. (Tr. 16, 206). A subsequent lumbar spine MRI scan in May of 2009 was reported to reveal multilevel facet arthrosis, disc degeneration, and disc protrusion but no herniated nucleus pulposus, fracture or high grade stenosis. (Tr. 16, 210-211). Dr. Barry

8

Burchett's physical examination was noted to have found no evidence of radiculopathy. (Tr. 16, 216). The plaintiff's gait was said to be normal and he was comfortable both sitting and supine. (Tr. 16, 214). Tenderness was found upon examination of the upper extremities and there was no sign of redness, warmth, swelling, or nodules. (Tr. 16-17, 215). The ALJ observed that Dr. Burchett's examination of the claimant's legs found no tenderness, redness, warmth, swelling, fluid, laxity or crepitus in the knees, ankles or feet. (Tr. 17, 215). Dr. Burchett reported that the cervical spine was free of tenderness and muscle spasm. (Id.). Dorsolumbar spine curvature was normal with no evidence of muscle spasm or tenderness. (Id.). Straight leg raising was noted to be negative both sitting and supine. (Id.). Neurological examination did not reveal atrophy, with sensation and reflexes normal. (Tr. 17, 216). The ALJ also cited the findings of Dr. William Brooks, a neurosurgeon to whom Teague was referred by Dr. Woolum for a surgical consultation. Dr. Brooks was reported to state that the MRI scan showed degenerative disc disease but not evidence of a focal disc protrusion that would provide anatomical/clinical correlation. (Tr. 17, 231). The treatment notes of Dr. Woolum contain mainly pain complaints and do not record many abnormal physical findings. (Tr. 18, 202-208, 220-228, 248-252, 257-261). Therefore, the court finds that the ALJ clearly articulated how a lack of physical findings undermined Dr. Woolum's extensive physical restrictions.

11-201 Barry Jackson Teague

The ALJ cited a number of activities in which Teague engaged which he thought also undermined Dr. Woolum's restrictions. These included his ability to dress and bathe himself, preparing meals, doing laundry, visiting with others, attending church services, driving 20 miles a week, eating out in restaurants, and lifting and pulling on his water heater. (Tr. 17-18). While these reasons are not as persuasive as the paucity of physical findings, they do not support the plaintiff's claim.

Dr. James Ramsey, a non-examining medical reviewer, was the only other physician of record to identify specific physical limitations.[1] Dr. Ramsey saw the record in September of 2009 and opined that Teague was restricted to a full range of medium level work. (Tr. 240-247). The ALJ's findings were consistent with this opinion.[2] The plaintiff notes that Dr. Ramsey did not see a complete record, pointing out that several exhibits were submitted into evidence following the doctor's review, including Dr. Woolum's physical capacity assessment (Tr. 250), treatment notes from the doctor dated between June, 2009 and January, 2010 (Tr. 252, 259), an MRI scan dated February, 2004 (Tr. 255) and a March, 2010 letter from Dr. Woolum (Tr. 261). Social Security Ruling (SSR) 96-6p indicates that when an ALJ

---

[1] The record was also reviewed by Lee Miller, but he was not an "acceptable medical source." 20 C.F.R. § 404.1513.

[2] While the ALJ's findings were consistent with this opinion, the ALJ did express a belief that more restrictions were required. (Tr. 18).

relies upon the opinion of a non-examiner over a treating source, then the non-examiner needs to have seen a complete record containing the opinion of an expert in the claimant's particular impairment which contains more detailed and comprehensive information than that which was available to the treating source. Dr. Burchett and Dr. Brooks were specialists in the plaintiff's particular impairment who certainly provided more detailed and comprehensive information than that provided by Dr. Woolum.  Dr. Ramsey did articulate the reasons for his findings, citing the opinions of Dr. Burchett and Dr. Brooks.  (Tr. 241).  The problem for the administration concerns the fact that Dr. Ramsey did not see a complete record. However, the only objective finding cited by Dr. Woolum in support of his extensive restrictions was the May, 2009 MRI scan showing disc protrusion.  (Tr. 259).  This exhibit was also before Dr. Ramsey at the time of his September, 2009 review. The February, 2004 MRI scan presented by Teague was dated almost four years before the claimant's alleged onset date during a time period he does not allege to have been disabled.  The meager findings contained in the treatment notes not seen by Dr. Ramsey appear so patently deficient to support the extensive restrictions that this omission is a rare instance when the ALJ could not possibly have credited the treating physician's findings based upon this information.  Therefore, any error is harmless.

11-201 Barry Jackson Teague

Finally, Teague asserts that the ALJ erred by striking a compromise between the modest restrictions of Dr. Ramsey and the more extensive ones reported by Dr. Woolum, thereby impermissibly substituting his own lay opinion for those of the medical professionals. As previously noted, the ALJ cited good reasons to reject the opinion of Dr. Woolum and his findings were consistent with Dr. Ramsey's opinion. The ALJ believed that more severe restrictions than those found by the reviewer were required and, so, such a finding was made. However, this gave the claimant the benefit of the doubt and, so, was a favorable finding for him. Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 4th day of May, 2012.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**

12